FREDERICK COHEN, PRO SE
1540 Broadway
New York, NY 10036-4085
Fcohen@duanemorris.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 7 |
| THELEN LLP, | Case No. 09-15631 (ALG) |
| Debtor. | |
| YANN GERON, as Chapter 7 Trustee of the Estate of THELEN LLP, Plaintiff, -against- Frederick Cohen, Defendant. | Adv. Pro. No. 11-02674 (ALG) |

**BRIEF ON BEHALF OF DEFENDANT**

**Frederick Cohen, Pro Se**
**1540 Broadway**
**New York, NY 10036-4085**
**Telephone (212) 692-1000**

# TABLE OF CONTENTS

BRIEF ON BEHALF OF DEFENDANT ........ 1

JURISDICTION ........ 5

ISSUES PRESENTED ........ 5

NATURE OF ACTION ........ 5

PROCEEDINGS IN THE BANKRUPTCY COURT ........ 6

DECISION OF THE BANKRUPTCY COURT ........ 6

STATEMENT OF FACTS ........ 6

ARGUMENT ........ 11

CONCLUSION ........ 18

# TABLE OF AUTHORITIES

**Federal Cases**

Citrus Mktg. Bd. v. J. Lauritzen A/S, 943 F.2d 220 (2d Cir. 1991) ....................18

Dev. Specialists v. Akin Gump, 2011 W.L. 5244463 (S.D.N.Y. 2011) ....................16

In Re Gandy, 299 F.3d 489 (Fifth Cir. 2002) ....................5-6, 13-14

Genesco v. Kakiuchi, 815 F.2d 840 (2d Cir. 1987) ....................17

Granfinanciera S.A. v. Nordberg 492 U.S. 33 (1989) ....................17

Hagerstown Fiber Limited Partnership v. Landegger, 277 B.R.181 (S.D.N.Y. 2002) ....................12

MBNA America Bank NA v. Hill, 436 F.3d 104 (2006) ....................14

Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed 2d 765 (1983) ....................11

In Re National Gypsum, 118 F.3d 1056 (5th Cir. 1997) ....................5

In Re Salander O'Reilly Galleries, 453 BR 106 (S.D.N.Y. 2011) .................... 13-14

Shearson/Am Express, Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed 2d 185 (1987) ....................11, 17

In Re Singer v. Akai Electric, 2001 W.L. 984678 (S.D.N.Y. 2001) ....................5, 15

In Re U.S. Lines, 197 F.3d 631 (2d Cir. 1999) ....................11, 15, 18

In Re Winimo Realty, 270 B.R. 108 (S.D.N.Y. 2001) ....................5, 11, 13

**Federal Statutes**

9 U.S.C. §3 .................... 5-6, 18

9 U.S.C. §16(a)(1)(A) ....................5

11 U.S.C. §362(h) ....................14

11 U.S.C. §542(a) ....................6

11 U.S.C. §§544, 548 and 550 ....................13

11 U.S.C. §544(b) ....................6

11 U.S.C. §548(a)(1)(B) ....................6

28 U.S.C. §158(a)(1)....................5

Chapter 7 of Title 11 of the Bankruptcy Code....................10

**Rules**

Bankruptcy Rule 8001(a)....................5

**Other Authorities**

Dewitt v. Columbia Casualty, 11 Civ. 6826 (D.C.N.Y. 2012)....................15

## JURISDICTION

This is an appeal from the denial of Defendant's motion for an order pursuant to 9 U.S.C. §3 staying the adversary proceeding upon the ground that the issues raised therein are required to be arbitrated pursuant to a clear and explicit agreement requiring arbitration. The Court has jurisdiction pursuant to the provisions of 28 U.S.C. §158(a)(1), 9 U.S.C. §16(a)(1)(A) and Bankruptcy Rule 8001(a).

## ISSUES PRESENTED

1. Whether the Bankruptcy Court had discretion to deny the motion to stay the adversary proceeding and compel arbitration. This issue is a matter of law subject to de novo review by this Court. Defendant submits that under the facts presented, the Bankruptcy Court had no discretion and was required to stay the adversary proceeding and compel arbitration. See, In Re Winimo Realty, 270 B.R. 108 (S.D.N.Y. 2001); In Re Singer, 201 W.L. 984678 (S.D.N.Y. 2001)

2. Assuming the Bankruptcy Court had discretion to decline to stay the adversary proceeding whether that discretion was properly exercised. This issue is reviewable for abuse of discretion. See, In Re National Gypsum, 118 F.3d 1056, 1061 (5th Cir. 1997); In Re Gandy, 299 F.3d 489 (Fifth Cir. 2002); In Re Winimo supra.

## NATURE OF ACTION

The Plaintiff, Trustee in Bankruptcy of the Debtor law firm commenced an adversary proceeding to recover alleged overpayments made by the Debtor to the Defendant, a former partner of the Debtor law firm.

The Complaint in the adversary proceeding asserts seven claims for relief as follows:

Count I – "Breach of Contract (Overcompensation)" -- $88,028

Count II – "Breach of Contract (Capital Contributions)" -- $13,403

Count III – "Turnover of Estate Property" pursuant to 11 U.S. 542(a) (Loan Receivable) $11

Count IV – "Unjust Enrichment" for sums claimed due in Counts I, II and III

Count V -- "Fraudulent Conveyance" pursuant to 11 U.S.C. §548(a)(1)(B) for the sums claimed due in Counts I and III

Counts VI, VII and VIII -- "Fraudulent Conveyances" pursuant to 11 U.S.C. §544(b) and the California Corporation Code for the sums claimed due in Counts I and III

Count IX – Disallowance of Defendant's Claim

A copy of the Complaint is annexed to Defendant's motion as Exhibit "B".

**PROCEEDINGS IN THE BANKRUPTCY COURT**

This appeal arises from the denial of Defendant's motion for an order pursuant to 9 U.S.C. §3 staying the adversary proceeding upon the ground that the agreement between the Debtor and the Defendant required arbitration of all disputes between the parties.

**DECISION OF THE BANKRUPTCY COURT**

The Bankruptcy Court relying on the authority of In Re Gandy, 299 F. 3d 489 (5th Circuit, 2002) held that the claims asserted in the adversary proceeding were "avoidance claims" which were "core" issues and not subject to arbitration. (Transcript 59-62)

**STATEMENT OF FACTS**

It is respectfully submitted that the relevant facts are not in dispute and may briefly be summarized below.

For a period of approximately 27 years prior to February 1, 2006, Defendant was a name

partner in the law firm of Ross & Cohen LLP ("R&C"), a well-known and highly regarded boutique firm specializing in construction law.

On February 1, 2006, R&C merged its practice and its fifteen attorneys with the firm of Brown Raysman Millstein Felder & Steiner LLP ("Brown Raysman").

In the early summer of 2006, before the fifteen R&C attorneys had fully unpacked and integrated, Brown Raysman announced that it was in serious merger discussions with the law firm of Thelen Reid & Priest.

On December 1, 2006, the merger of Brown Raysman and Thelen Reid & Priest was consummated to form Thelen Reid Brown Raysman & Steiner LLP ("TRBRS").

In the fall of 2007, the Managing Partner of TRBRS claimed that he was unaware of the existing guaranteed compensation arrangement between Defendant and Brown Raysman (which by virtue of the merger was assumed by TRBRS) and refused to honor its terms unless it was restructured.

That restructuring process took approximately seven months and by written agreement dated May 29, 2008 (the "Employment Agreement"), TRBRS and Defendant confirmed the guaranteed compensation arrangement for 2007 and agreed upon a method of computation for compensation in 2008 and 2009. A copy of the Employment Agreement is annexed to Plaintiff's Opposition as Exhibit "A".

The Employment Agreement, which was to govern Defendant's "continued participation as a Partner in the Firm" contains the following relevant provisions:

> "2.1 For each of 2008 and 2009, you will be paid as supplemental compensation, provided your performance satisfies the criteria stated below, an amount sufficient, in addition to your point based-compensation for that calendar year, to bring your total base compensation to $700,000. Payment of such supplemental compensation will be made at the same time as

bonuses are paid to other partners, generally in March or April of the following year."

* * * * *

"2.7.1 For 2008, in order to qualify for the supplemental compensation and the incentive compensation, you must be a partner in good standing on December 31, 2008, and all three of the following criteria must be satisfied: (a) the combined creditable billable hours for you and Allen Ross[1] must exceed 1,600; (b) the overall (billing and collection) realization for non-contingency matters on which either you or Allen Ross are the Matter Billing Attorney ("MBA") must not be less than 80%; and (c) the MBA Fee Collections received during the calendar year from matters for which either you or Allen Ross are the MBA must exceed $4.5 million."

"2.8 The performance criteria identified in paragraphs 2.7.1 and 2.7.2 have been set at levels the Firm believes you can readily attain in 2008 and 2009. However, in the event that unforeseen events beyond your control (such as poor health or the like) impair your ability to satisfy these criteria, the Office of the Chair will equitably adjust the supplements or incentive compensation provided for under this agreement. In considering such equitable adjustment, the Office of the Chair will compare your actual performance against the following standards: (a) 2,000 hours of combined creditable billable hours for you and Allen Ross; (b) an overall (billing and collection) realization of 85% for non-contingency matters on which either you or Allen Ross are the MBA; and (c) $4.5 million of calendar year MBA Fee Collections for matters for which either you or Allen Ross are the MBA."[2]

* * * * *

"3.4 For avoidance of doubt, any dispute relating to this letter shall be determined in accordance with Section 8.9 of the Partnership Agreement."

---

[1] Allen Ross, the other name Partner in Ross & Cohen, has the same employment agreement and is a defendant in a separate adversary proceeding. His time to answer the Complaint has been extended pending further proceedings in this case.

[2] An earlier unsigned version of the Employment Agreement dated May 2, 2008 is annexed to Defendant's motion as Exhibit "A" which includes an earlier version of paragraph 2.8. The later version was unavailable to Defendant at the time of the motion.

Section 8.9 of the Debtor's Partnership Agreement requires disputes to be resolved by arbitration and reads as follows:

"8.9 Arbitration

8.9.1 **Arbitration, Confidentiality.** Any controversy or claim arising out of or relating to this Agreement, including any breach, amendment or modification hereof, shall be determined exclusively by arbitration conducted either in the City of New York, New York or San Francisco, California, by and pursuant to the Commercial Arbitration Rules then in effect of the American Arbitration Association ("AAA"). All arbitration proceedings and matters related thereto shall be treated as confidential, and no transcripts, documents, briefs or other materials shall be disclosed by any party to anyone not a party to the arbitration or participating therein as an arbitrator, expert or court reporter.

8.9.2 **Arbitration Procedures.** The Partnership or any Partner or Former Partner may commence arbitration by sending a written demand for arbitration to the Office of the Chair, if directed to the Partnership, and to a Partner or Former Partner at such Partner's address as shown on the records of the Partnership. Such demand shall set for the nature of the mater to be resolved and the relief sought. All arbitrations shall be conducted by a panel of three arbitrators selected from a list of seven or more retired judges provided by the AAA with each side allowed two peremptory challenges, such selection process to be conducted by the AAA in the city in which the arbitration proceeding is conducted. The costs of the arbitration, including arbitrator's fees, shall be divided equally between the Partnership and any and all of the adverse parties, unless the arbitral panel determines it more equitable to allocate such costs otherwise; provided, however, that each party shall pay the fees and expenses of its own counsel, accountants, experts, agents or representatives.

8.9.3 **Finality.** The arbitration award shall be final and binding upon the parties, and judgment may be entered thereon in any court of competent jurisdiction."

A copy of the Partnership Agreement is annexed to Defendant's motion as Exhibit "D".

In August of 2008, the Debtor shortened its name to Thelen LLP ("Thelen"). In October of 2008 the Thelen partners voted to dissolve the firm and on November 30, 2008 the firm closed

its doors and ceased the practice of law. Approximately nine months later, the Debtor filed a voluntary petition under Chapter 7 of Title 11 of the Bankruptcy Code.

As of November 30, 2008, Defendant received compensation for 2008 in the sum of $293,348, leaving a claimed balance due of $406,652, being the unpaid portion of the $700,000 guaranteed component referenced in Section 2.1 of the Employment Agreement. Defendant also claims he is due unpaid deferred compensation for 2007 of $100,000 or a total of $506,652.

On November 24, 2009, Defendant filed a Proof of Claim with the Bankruptcy Court in the sum of $493,000.[3]

On or about September 15, 2011, the Trustee commenced the instant adversary proceeding seeking recovery in the sum of $88,028 representing alleged over compensation in violation of the provisions of the Partnership Agreement and in the sum of $13,403 representing alleged capital contributions owed to the Debtor. (See Counts I and II of the Complaint)[4]

On January 26, 2012, Defendant interposed an Answer to the Complaint denying generally the allegations therein and affirmatively asserting that the claims of the Trustee are required to be arbitrated pursuant to the applicable provisions of the Debtor's Partnership Agreement quoted above. A copy of the Answer is annexed to Defendant's motion as Exhibit "C".

---

[3] The difference between the total due of $506,652 and the Proof of Claim amount of $493,000 was a portion of Defendant's deferred compensation that was deposited with Charles Schwab by the Debtor. (See Exhibit "B" annexed to Trustee's Opposition) Mysteriously, that sum has disappeared.

[4] Nowhere in the Complaint does the Trustee acknowledge the existence of the Employment Agreement.

As will be demonstrated below, based upon the uncontested facts, the Bankruptcy Court had no discretion to deny the motion to stay the adversary proceeding in light of the arbitration provisions and relevant precedent in this Circuit. The Trustee failed to meet his burden to demonstrate that arbitration of the dispute between the Debtor and the Trustee would frustrate some underlying Bankruptcy Code Policy.

## ARGUMENT

## POINT I

### WHERE CORE BANKRUPTCY CLAIMS ARE DERIVATIVE OF AND PERIPHERAL TO NON-CORE CLAIMS, THE COURT IN THE CIRCUMSTANCES PRESENTED HERE SHOULD ENFORCE THE AGREED UPON ARBITRATION PROVISION

The Federal Arbitration Act ("FAA") has established a strong policy and rigorous enforcement of arbitration agreements. See, Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed 2d 765 (1983) That mandate can be overridden, if the party opposing arbitration, can establish that Congress intended to preclude arbitration of the statutory rights at issue. Shearson/Am Express, Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed 2d 185 (1987)

As stated by the Second Circuit, disputes that involve both the FAA and the Bankruptcy Code raise a conflict of "near polar extremes: bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach toward dispute resolution." In Re U.S. Lines, 197 F.3d 631 at 640 (2d Cir. 1999)

This case requires a resolution of just such a conflict. Following the decision in U.S. Lines, the applicable law in the Second Circuit was summarized by Judge Scheindlin in Winimo Realty v. City of Albany, 270 B.R. 108 (S.D.N.Y. 2001) as follows:

> "The Second Circuit has recognized that a Bankruptcy Court has discretion to decline to compel arbitration when a conflict exists 'between the Bankruptcy Code, which favors centralization approach to dispute resolution.' *See In re Crysten/Montenay Energy Co.*, 226 F.3d 160, 166 (2d Cir.2000) (citing U.S. Lines, 197 F. 3d at 640-41). When faced with a motion to compel arbitration, a Bankruptcy Court must perform a two-stage inquiry. *First,* the court must determine whether it has discretion to refuse arbitration. *See Singer*, 2001 WL 984678, at *3. *Second,* if the Bankruptcy Court determines that it does have such discretion, the question "with respect to the exercise of that discretion is 'whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing [the] arbitration clause'." *Id.* (quoting *U.S. Lines*, 197 F.3d at 640.
>
> In the first inquiry, the Bankruptcy Court must examine "whether the proceeding involves provisions of the [Bankruptcy] Code that so inherently conflict with arbitral resolution that" those provisions manifest "Congressional intent to grant the bankruptcy courts discretion to refuse arbitration ...." Id. at *3. Here, the Second Circuit has made a distinction between core and non-core proceedings. *See* Crysen, 226 F.3d at 166; U.S. Lines, 197 F.3d at 640; *Singer*, 2001 WL 984678, at *3. "[B]ankruptcy courts generally do not have discretion to decline to stay non-core proceeding in favor or arbitration." *Crysen*, 226 F.3d at 166. This is because non-core proceedings "are unlikely to present a conflict sufficient to override by implication the presumption in favor of arbitration." U.S. Lines, 197 F. 3d at 640 (citing *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 885 F.2d 1149, 1161 (3d Cir. 1989)). In core proceedings, where "the interest of the bankruptcy court is greater," there may very well be a conflict between the Bankruptcy Code and the Arbitration Act. Crysen, 226 F.3d at 166. But "even a determination that a proceeding is core will not automatically give the bankruptcy court discretion to stay arbitration," for "not all bankruptcy proceedings are premised on provisions of the Code that 'inherently conflict' with the Federal Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code." U.S. Lines, 197 F.3d at 640. (quoting Nat'l Gysum, 118 F.3d at 1067). Thus when a proceeding is core, the bankruptcy court must still analyze whether arbitration of the proceeding would jeopardize Bankruptcy Code policy.

In Hagerstown Fiber Limited Partnership v. Landegger, 277 B.R.181 (S.D.N.Y. 2002) Chief Judge Bernstein granted a stay of the fraudulent conveyance claim and directed arbitration of the breach of contract disputes arising out of the same transaction holding that "the arbitration

may contribute to the resolution of the issues raised by the fraudulent conveyance claims". In so holding, he amplified the principles discussed in Winimo supra:

> "The *Winimo* approach provides an appropriate framework for analysis, with some amplification. Assuming that the parties agreed to arbitrate the dispute, the bankruptcy court must consider whether it has any discretion to refuse to compel arbitration. Initially, the bankruptcy *203 court must decide if the proceeding is core or non-core. If the dispute is non-core, that will generally end the inquiry. The bankruptcy court will lack the discretion to refuse to compel arbitration.
>
> If the matter is core, the bankruptcy court must still examine the nature and reason for its "coreness." Many proceedings are procedurally core; they are garden variety pre-petition contract disputes dubbed core because of how the dispute arises or gets resolved. Objections to proofs of claim and counterclaims asserted by the estate, the types of core proceedings involved in *Singer* and *Winimo*, exemplify this type of matter. The arbitration of a procedurally core dispute rarely conflicts with any policy of the Bankruptcy Code unless the resolution of the dispute fundamentally and directly affects a core bankruptcy function. *See In re United States Lines,* 197 F.3d at 638-39."

In Re Gandy, 299 F.3d 489 (5th Cir. 2002) relied upon by the Bankruptcy Court in denying the motion for a stay, actually supports the position presented by Defendant herein. In that case the Court denied arbitration of Debtor's avoidance claims under Sections 544, 548 and 550 of the Bankruptcy Code holding that "that a bankruptcy court may decline to stay a proceeding whose underlying nature derives exclusively from the provisions of the Bankruptcy Code." The Court further found the claims asserted "implicated non-bankruptcy contractual and tort issues in 'only the most peripheral manner'". Id. At 497. In the case at bar just the opposite is true, the contractual non-bankruptcy claims are the heart of the dispute, not peripheral thereto.

In Re Salander O'Reilly Galleries, 453 BR 106 (S.D.N.Y. 2011), relied upon by the Trustee and the Bankruptcy Court is readily distinguishable and inapplicable. In that case the Court denied enforcement of an arbitration clause against parties that were not parties to its

agreement with the Debtor and where the underlying avoidance claims derived solely from provisions of the Bankruptcy Code.

In this case, it is crystal clear that the bankruptcy claims do not predominate. Of the eight counts presented in the Complaint, Counts V, VI, VII and VIII seek recovery on fraudulent conveyance theories for any sums found due the Trustee under Counts I and II for breach of contract. In other words, there must first be a resolution of the contract claims before the Court can even evaluate the fraudulent conveyance claims. In effect, the Trustee has asserted these so-called "avoidance" claims solely in an attempt to avoid the contractually mandated arbitration clause. Thus, unlike Gandy and Salander, the Trustee's avoidance claims are not reached until there is a determination of the common law contractual claims.

In MBNA America Bank NA v. Hill, 436 F.3d 104 (2006) the Second Circuit held that the Bankruptcy Court did not have discretion to refuse to stay an adversary proceeding (including alleged violations of Section 362(h) of the Bankruptcy Code) where a pre-bankruptcy agreement required arbitration. In language equally applicable to this case, the Court stated:

> "Bankruptcy courts are more likely to have discretion to refuse to compel arbitration of core bankruptcy matters, which implicate "more pressing bankruptcy concerns." *In re U.S. Lines, Inc.*, 197 F.3d at 640. However, even as to core proceedings, the bankruptcy court will not have discretion to override an arbitration agreement unless it finds that the proceedings are based on provisions of the Bankruptcy Code that "inherently conflict" with the Arbitration Act or that arbitration of the claim would "necessarily jeopardize" the objectives of the Bankruptcy Code. *Id.*" Id at 108 (Emphasis added)

While Defendant recognizes that the filing of a proof of claim in this matter and the Trustee's assertion of the fraudulent conveyance claims may provide a basis for a determination that this is a core proceeding, that in and of itself is not sufficient to deny enforcement of the arbitration agreement.

It is respectfully submitted that the circumstances of this case do not demonstrate that arbitration would represent an inherent conflict with the Bankruptcy Code or would necessarily jeopardize its objectives as required by In Re U.S. Lines, supra.

In In Re Singer v. Akai Electric, 2001 W.L. 984678 (S.D.N.Y. 2001), Judge Swain analyzed some of the factors to determine if a core matter presents an "inherent" conflict as to permit a Bankruptcy Court to properly exercise its discretion to deny arbitration.

The Court posited the following question:

> "Does the underlying dispute concern non-Bankruptcy Code issues derivative of the debtor's pre-petition business activities or does it concern rights created by the Bankruptcy Code?"

In Singer, as in the case at bar, the issues raised in the adversary proceeding center on "pre-petition contractual rights, obligations and conduct." Additionally, "it is a core proceeding only because it is in effect a counterclaim to the claim… asserted against the estate." As a result, Judge Swain held that the issues raised in the adversary proceeding "do not, standing alone present an inherent conflict between Code policy and the FAA's endorsement of the arbitral forum". See also Dewitt v. Columbia Casualty, 11 Civ. 6826 (D.C.N.Y. 2012)

Arguments raised by the Trustee, that permitting arbitration would jeopardize the objectives of the Bankruptcy Code do not stand up to scrutiny.

The Trustee claims that permitting the claims to be adjudicated in an arbitration "creates the risk and uncertainty of collateral estoppel" and that there is a need "to promote uniformity in results". (Paragraphs 56 and 58 Trustee's Opposition)

However, the claims to be adjudicated are unique to the Defendant (and Allen Ross) as there is no other or similar employment agreement which is the subject of any other adversary proceeding. They "will have no impact that would require uniform, coordinated adjudication

before the Bankruptcy Court". Dev. Specialists v. Akin Gump, 2011 W.L. 5244463 (S.D.N.Y. 2011) Thus, there is no issue of "uniformity" or collateral estoppel.

The Trustee also argues that arbitrating Defendant's claims would be costly and inefficient since other adversary proceeding defendants would likely seek arbitration "which would result in a number of independent arbitrations in front of multiple fact-finders unfamiliar with this case". (Paragraph 65, Trustee's Opposition).

Here again, the Trustee ignores the unique circumstance of the pre-petition Employment Agreement and has not claimed that there are other similar agreements with other former partners of the Debtor.

Finally, the Trustee maintains that the Bankruptcy Court should retain jurisdiction, because it "has a level of familiarity and expertise that will be unmatched by one or more arbitrators unfamiliar with this matter". (Paragraph 66, Trustee's Opposition)

While Defendant certainly recognizes that the Bankruptcy Court has the requisite expertise, at issue is a very basic, garden-variety contract dispute. Moreover, the arbitration provision governing the dispute requires adjudication before the American Arbitration Association in New York City before a panel of three arbitrators selected from a list of seven or more retired judges. There are no novel or complicated issues to be arbitrated. The basic issue is Defendant's substantial performance under the employment agreement and to what extent the Debtor frustrated that performance. Certainly any former judge or practicing lawyer is qualified to hear that dispute.

Clearly, the claims asserted by the Trustee and the resolution of those claims in arbitration do not involve important bankruptcy policies; nor do these claims involve an

allocation of property among creditors or interfere with the Bankruptcy Court's ability to preserve and equitably distribute the assets of the estate.

Moreover, the Trustee has not claimed that a decision of an arbitration panel will take any longer to obtain than a judgment of the Court. To the contrary, arbitration will be swift and can resolve the dispute with relative finality unavailable in a judicial proceeding with full appellate rights.

The Trustee's fraudulent conveyance and turnover claims, while procedurally "core", represent essentially a garden-variety pre-petition dispute denominated as "core" as a result of the vehicle employed by the Trustee for its resolution. These claims are derivative of and dependent upon a determination of the contractual rights under the Employment Agreement and are, as stated by the Supreme Court, "quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditor's hierarchically ordered claims to a pro rata share of the bankruptcy res." See, Granfinanciera S.A. v. Nordberg 492 U.S. 33, 56 (1989). The characterization of the claims by the Trustee as a fraudulent conveyance or turnover proceeding does not require the Court to wear blinders as to their true substance. "In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the Complaint, rather than the legal causes of action asserted". Genesco v. Kakiuchi, 815 F.2d 840, 846 (2d Cir. 1987)

The burden of proof is on the Trustee to demonstrate that arbitration of this dispute would frustrate some underlying Bankruptcy Code policy as required by the Supreme Court in Shearson American Express, Inc. v. McMahon supra, or that arbitration "would seriously jeopardize the objectives of [Bankruptcy] Code" as held by the Second Circuit in U.S. Lines, supra at 640.

Clearly, this burden has not been met. Accordingly, the agreed upon forum for dispute resolution and the strong federal policy favoring arbitration should be enforced.

## CONCLUSION

The order of the Bankruptcy Court denying Defendant's motion for an order pursuant to 9 U.S.C. § 3 staying the adversary proceeding should be reversed. Alternatively, the Court may stay only the Bankruptcy claims asserted in the adversary proceeding pending arbitration of the common law contract claims asserted in Counts I, II and IV. See, Citrus Mktg. Bd. v. J. Lauritzen A/S, 943 F.2d 220, 225 (2d Cir. 1991)

Dated: New York, New York
June 25, 2012

Respectfully Submitted,

Frederick Cohen, Pro Se
1540 Broadway
New York, New York 10036
212-692-1000



DM1\3287472.6